S91A1409. NORTHPARK ASSOCIATES NO. 2, LTD. v. HOMART DEVELOPMENT COMPANY.
(414 SE2d 214)

FLETCHER, Justice.

Northpark Associates No. 2, Ltd. seeks to enforce its private easement rights in abandoned roads in a former residential subdivision that Homart Development Company has redeveloped as commercial property. We reverse the trial court's finding that Northpark never acquired any easement rights and remand for consideration of the remaining issues.

In 1962, owner and developer John Dromey recorded the Crestline Valley subdivision plat in the superior court clerk's office in Fulton County. The plat divided the property into lots and delineated the location of the two subdivision roads. In 1984 Homart bought all but two lots of the subdivision and all the lots in two adjoining subdivisions to develop an office project. Northpark, a competing devel-

oper, acquired Lot 5 fronting on Crestline Road and Lot 11 fronting on Crestline Valley Circle by deeds that referred to the recorded plat. Northpark's title to these lots descended in chain of title from Dromey by deeds that also referred to the recorded plat.

As a result of an October 1988 agreement with Homart, the Fulton County Commission resolved to abandon portions of Crestline Road and Crestline Valley Circle ("Crestline Roads") and, if necessary, to condemn Northpark's private easement rights in the subdivision roads.[1] In exchange for a quitclaim deed from the county for the abandoned portions of the Crestline Roads, Homart agreed to pay any condemnation costs, construct a new parkway, and construct new sewer lines. Both of Northpark's lots would have access to the new parkway. Northpark neither appealed the rezoning granted Homart in 1988 nor sought to enjoin the construction of the parkway in 1989; the county has not condemned Northpark's easement rights in the subdivision roads.

In 1990, the county accepted the dedication of the Crestline Parkway, abandoned portions of the Crestline Roads, and delivered a quitclaim deed to Homart conveying the county's interest in the abandoned roads. A month later Homart closed the abandoned roads. Northpark then sought an injunction to prevent Homart from interfering with its easement rights. Northpark appeals the trial court's denial of the injunction.

1. A developer's sale of lots in a subdivision according to a recorded plat creates private easement rights in favor of purchasers in any area set apart for their use. *Walker v. Duncan*, 236 Ga. 331, 332 (223 SE2d 675) (1976); *Westbrook v. Comer*, 197 Ga. 433, 439 (29 SE2d 574) (1944). We have repeatedly upheld this long-standing principle.

> Where the owners of a tract of land subdivide it into lots, record a map or plat showing such lots, with designated streets and a public park, and sell lots with reference to such map or plat, the owners are presumed to have irrevocably dedicated such streets and park for the use of all of the lot owners in the subdivision. . . . The owners of lots in the subdivision have an easement in these public areas whether or not there has ever been an acceptance of the dedication by public authorities or the public generally.

---

[1] By Crestline Roads, we mean Crestline Valley Circle and Crestline Road in the three subdivisions that Homart bought as part of its office project. The term "subdivision roads" refers to Crestline Valley Circle and the part of Crestline Road delineated on the subdivision plat that Dromey recorded.

*Stanfield v. Brewton*, 228 Ga. 92, 94-95 (184 SE2d 352) (1971); accord *Owens Hardware Co. v. Walters*, 210 Ga. 321 (80 SE2d 285) (1954). The rationale is that the purchasers have given consideration for the property's enhanced value by paying a higher price for their lots. *Walker v. Duncan*, 236 Ga. at 332. Once acquired, a private easement in a road is not extinguished when a county abandons the road; a private easement also is not transferred from a closed road to a relocated road. *Glass v. Carnes*, 260 Ga. 627, 632 (398 SE2d 7) (1990); *Bayard v. Hargrove*, 45 Ga. 342, 351 (1872).

The Crestline Valley Subdivision owner and developer recorded the subdivision plat showing the subdivision roads, then sold lots to Northpark's predecessors-in-title by deeds referring to the recorded plat. The plat had no notation that the developer had conveyed the subdivision roads in fee simple to the county nor had the developer conveyed the roads to the county by deed prior to the sale of the subdivision lots. Therefore, Northpark acquired easement rights in the subdivision roads when it bought the two lots by deeds in chains of title that made reference to the recorded plat. The closing of the abandoned portions of the subdivision roads and their relocation to the Crestline Parkway did not eliminate Northpark's easement rights in the subdivision roads delineated on the Crestline Valley subdivision plat. Northpark's easement rights acquired in this manner are limited to the subdivision roads shown on the plat that Dromey recorded and do not extend to the parts of Crestline Road abutting Homart's property in the other two subdivisions that Homart bought for its development.[2]

2. Homart argues that Northpark did not acquire private easement rights because the subdivision developer did not have any rights to convey. Homart contends that Dromey had already dedicated fee-simple title in the subdivision roads to Fulton County by recording the subdivision plat. Citing this court's opinion in *Clark v. McBride*, 256 Ga. 308 (348 SE2d 634) (1986), Homart concludes that "the recording of a subdivision plat transfers fee simple title to the county where there is no indication that the owner intended to transfer only an easement."

As we have previously acknowledged, "the recording of a subdivision plat not only acts as the grant of an easement to the purchasers of the property, but also raises a presumption of intent to dedicate to the public." *Walker*, 236 Ga. at 332. There is an additional presumption that the dedication of roads to a county, whether express or implied, transfers only an easement. See *R. G. Foster &c. v. Fountain*,

---

[2] Our holding in this case does not alter the law dealing with the abandonment of easements as articulated in *Tietjen v. Meldrim*, 169 Ga. 678 (151 SE 349) (1929).

216 Ga. 113, 123 (114 SE2d 863) (1960); 1 G. Pindar, Georgia Real Estate Law and Procedure, § 5-14 (3d ed. 1986). A governing authority can acquire fee-simple title to a county road only through condemnation or an express grant in a deed or other instrument. "Where, as here, a road is established by dedication and there is no express grant of fee-simple title, an easement results." *Glass v. Carnes*, 260 Ga. at 630.

Our decision in *Clark*, which concerned a 20-foot strip of land used for sewage and drainage, failed to consider the presumption that the dedication conveyed an easement and not a fee-simple title. Furthermore, the *Clark* decision went outside the recorded plat, the instrument of dedication, to determine the parties' intentions. By considering the developer's and county's intentions, the decision violated the rule of construction that parol evidence is inadmissible when a written instrument is not ambiguous. See OCGA § 13-2-2; 23 AmJur2d 29, Dedication, § 32 (2d ed. 1983). Because of these problems, we overrule *Clark* to the extent it permits the developer's subjective intent in recording a plat to prevail. We reaffirm that a developer who intends to convey fee-simple title in subdivision roads must make an express grant to the county or other governmental authority.

3. Due to the present status of the record, we are unable to determine if the trial court properly exercised its discretion in denying the injunction. The trial court denied the injunction based on its finding that Northpark's predecessors-in-title never conveyed any private easement rights because the roads were dedicated to Fulton County before the sale of any subdivision lots, it was in the public interest to relocate the roads, and Homart had not impeded Northpark's access to its lots. Because the trial court never reached Homart's equitable defenses, particularly its laches defense, we remand this case for consideration of these and any other remaining issues.

*Judgment reversed and case remanded. All the Justices concur, except Benham, J., who dissents; Sears-Collins, J., not participating.*

BENHAM, Justice, dissenting.

Because I am firmly convinced that under the applicable law and the facts of this case Northpark never acquired an easement to the Crestline Roads, I must dissent to the reversal of the trial court's judgment.

1. In *Clark v. McBride*, 256 Ga. 308 (348 SE2d 634) (1986),[3] this court held that where there is no evidence contrary to a developer's

---

[3] The majority overrules this case insofar as it permits the developer's subjective intent to control the effect of a recorded plat, but that overruling does not affect the holding for which that case is cited herein.

intent to transfer fee-simple title to dedicated roadways, the recording of a plat of a subdivision accomplishes that end. In *Westbrook v. Comer*, 197 Ga. 433 (29 SE2d 574) (1944), it was established that lots conveyed after the owner has already conveyed title to an abutting roadway do not acquire an easement over that roadway. The evidence of this case shows that the developer of the subdivision in question, prior to conveying any lots in the subdivision, recorded a plat which dedicated to the county the roadways contained in the subdivision, without limitation except to reserve certain easements. Under the cases cited, the facts demand the conclusion that when Northpark's predecessors in title acquired their lots, the developer had no interest in the roadways and could not, therefore, convey easements over those roadways. The majority makes much of the fact that the recorded plat had no specific notation of a conveyance of fee-simple title in the roadways, but that misses the point which is that the recorded plat did not limit the dedication to a mere easement. In fact, it is clear from the fact that the plat reserved easements for sewage and "sloping, cuts and fills," that the dedication was of more than an easement. Even without the affidavits to which the majority objects, the intent of the developer in recording the plat and of the county in accepting the dedication is clear from the record created at the time of the recordation. This is not, therefore, a case where rights are being disrupted by a revisionist view of intent.

The authority relied upon by the majority does not establish the proposition for which it is cited. *Walker v. Duncan*, 236 Ga. 331 (223 SE2d 675) (1976), and *Westbrook v. Comer*, supra, are cited for the proposition that the sale of lots with reference to a recorded plat creates private easement rights in favor of the purchasers *in any area set apart for their use.* The emphasis added is crucial because of the context in which those cases were decided. *Walker* involved a park and a lake which were shown on a plat as part of the subdivision and there was no dedication of that part of the subdivision to the governing authority, only to the purchasers of lots in the subdivision. *Westbrook* is similarly distinguishable in that no rights in the alley in question there were dedicated or otherwise conveyed before the first purchaser bought an adjoining lot, but the fee in the alley had been sold when the subsequent purchasers of lots bought their properties. Reliance on *Stanfield v. Brewton*, 228 Ga. 92 (184 SE2d 352) (1971), and *Owens Hardware Co. v. Walters*, 210 Ga. 321 (80 SE2d 285) (1954), is likewise inappropriate: the streets in *Stanfield* were expressly dedicated to the owners of lots in the subdivision, and the governing authority in *Owens Hardware* did not accept the dedication. In the present case, there was no express dedication of the streets to lot owners and the governing authority accepted the dedication of fee-simple title, as is shown by the fact that the county never sought to tax the property

underlying the streets.

I must also take issue with the majority's assertion that there is a presumption that the dedication of roads transfers only an easement. That statement does not appear in *R. G. Foster &c. v. Fountain*, 216 Ga. 113 (114 SE2d 863) (1960), which the majority cites for that proposition, and I do not believe such a statement can fairly be drawn from the holdings of that case. It may be, as the majority states without citation of precedent, that a governing authority can acquire fee-simple title only through condemnation or an express grant in a deed or other instrument, but that is only true insofar as a recorded plat is recognized as an instrument by which fee-simple title to roads may be transferred. *Glass v. Carnes*, 260 Ga. 627 (398 SE2d 7) (1990), does not stand for a contrary principle.

The majority's opinion establishes a new and hyper-technical standard for judging the effect of dedication of streets in a subdivision by means of a recorded plat. That approach too severely limits the ability of trial courts to apply the "crucial test in determining whether a conveyance grants an easement in or conveys fee simple title to land [, which] is the intention of the parties." *Clark v. McBride*, supra at 309.

2. Even if the majority were correct in its application of the law regarding interests in land, and I am convinced it is not, this case should not be reversed. It is patent from the record of this case that Northpark's sole intent in purchasing the property and in opposing the abandonment of the Crestline Roads was to act as a "dog in the manger," a spoiler. The record shows that Northpark did not engage in any of the zoning proceedings and did not care about the accelerating disrepair of the roads to which it now lays claim. It was not until Homart had expended considerable sums to build an alternative roadway serving both of Northpark's lots that Northpark first made complaint about the loss of its asserted easement. When Northpark's objections were rejected, it did not pursue any appeal. Under those circumstances, it would be an injustice to uphold Northpark's lately asserted interest. Having slept on its asserted rights, rights which it sought to acquire only to prevent competition by another developer, Northpark should not be permitted to enlist the aid of equity for the purpose of oppression.

Being certain that Northpark has no rights in the Crestline Roads which should be enforced, I must dissent to the majority's reversal of the trial court's judgment.

DECIDED MARCH 13, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992.

*Peterson, Dillard, Young, Self & Asselin, G. Douglas Dillard,*

*Dick Wilson, Jr., J. Stewart Teague, Jr., Thomas O. Marshall,* for appellant.

*Frankel, Hardwick, Tanenbaum & Fink, Samuel N. Frankel, John D. Steele,* for appellee.